S. S. CORZINE, ADM'R, v. H. B. MORRISON.

See the opinion in this case for strictures on instructions which were not authorized by the evidence, and which were calculated to mislead the jury; in consequence of which it is *held* that the court below erred in overruling appellant's motion for a new trial.

APPEAL from Wood. Tried below before the Hon. Z. Norton.

The opinion states the case.

*Long & Oatman,* for the appellant.

No brief for the appellee has reached the reporter.

WALKER, J. In 1855, Morrison, the appellee, instituted this suit against Woodbury, the County Surveyor of Wood county, and one Norton. The proceeding against Norton was to quiet title, and it was thought to compel Woodbury, by *mandamus,* to record the field-notes of a survey of the three hundred and twenty acres of land now in controversy.

The petition charged that Norton was claiming the land under a location and survey of a headright certificate, and that Woodbury, fraudulently combining with Norton, refused to record the field-notes of the plaintiff's pre-emption survey.

Woodbury, in his answer, sets up that he refused to record the plaintiff's field-notes because the land had been previously appropriated; that Norton, as the agent of one Green, had located and surveyed the land by a valid headright certificate, before Morrison had taken any steps to pre-empt the land.

Norton, explaining that he was only the agent of Green in locating the certificate, disclaims all interest in the land, and Green defends the suit until his death, when Corzine, his administrator, is made party.

The facts in the case are few and plain. The land was surveyed for Green on the 17th and 18th days of December, 1852, nearly one year before Morrison had filed his affidavit for pre-emption. The affidavit is dated the 15th of November, 1853, and the field-notes are dated June 5th, 1855.

The Commissioner of the General Land Office certifies that the field-notes of Green's survey were filed for a patent on the 11th of November, 1853, and bore date of December, 1852. Then the field-notes for Green's patent were filed four days be-

fore Morrison's pre-emption affidavit was made.    The land was patented to Green in 1857.

These are all the material facts in the case.    A son of the plaintiff, Morrison, testified that his father settled upon the land in November, 1853, and resided on it until 1867, when he removed to the State of Arkansas, having rented the land to the witness; that the plaintiff had made improvements upon the land worth about five hundred dollars, and that the rental value of the land was about one hundred and twenty dollars per annum.    Green introduced his patent in evidence, and this is about all the evidence in the case.

The only possible question upon which the jury could have been at any loss, if properly instructed, might have been in fixing the value of improvements and rents.

The verdict is not in accordance with the law or the evidence, and why the court should have overruled the motion for a new trial, in such a case, we are unable to discover.    The inter-- venor was, both by the law and the evidence, entitled to a verdict for the land.

There was no evidence in the case to charge him with fraud in obtaining his patent for the land.    There was nothing to justify such expressions in the charge as this:    "It is insisted, "however, that the patent was obtained unfairly and by fraud." How insisted, and by whom?    Certainly there was no evidence in the case upon which counsel could have insisted that the patent was obtained by fraud against the plaintiff or the State.    And if counsel did insist, in argument, upon such a position, the court, instead of alluding to it in the charge in the manner it is done, should have forbidden an argument so entirely unauthorized.    The truth is, Green's survey had been made, and his certificate located by Norton long before Morrison made the pre-emption affidavit, and it would seem impossible to suppose that any fraud could have been intended against a man who was yet utterly unknown to have any claim upon or connection with the land whatever.    These unguarded remarks, and others, such as, "If the jury believe the land was

33

" patented to Green, or that there was a file and survey *made* " *in good faith* before the pre-emption settlement on the 15th " November, 1853, they will find for defendant," may have misled the jury to suppose the intervenor's title was vitiated by fraud; but there is no evidence of anything of this kind, and why introduce it, in this fatal manner, to the minds of men who, though meaning well and having due regard for their oaths, are so liable to be misled by any and every unfortunate error which comes from the bench.

The verdict is entirely without evidence to support it. The judgment is reversed, and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.